Janice Amanda HAYHOE, Appellant,

v.

Rick HENEGAR, Appellee.

No. 11–03–00316–CV.

Court of Appeals of Texas,
Eastland.

June 23, 2005.

Angela Morrow Nickey, Robles, Bracken, Coffman & Hughes, L.L.P., El Paso, Pat Long Weaver, Stubbeman, McRae, Sealy, Laughlin & Browder, Midland, for appellant.

Robert E. White, Childs Bishop & White, PlazaOdessa, for appellee.

Panel consists of ARNOT, C.J., and WRIGHT, J., and McCALL, J.

Opinion

JIM R. WRIGHT, Justice.

In a lawsuit arising out of an automobile accident, the jury found Janice Amanda Hayhoe liable for negligence. We modify and affirm.

On May 31, 1999, Rick Henegar was driving a truck in Sweetwater. While he was stopped at a red light, he was struck from behind by appellant. Immediately after the accident, EMS transported Henegar to the hospital emergency room, where he complained of back pain. On June 2, 1999, Henegar sought medical treatment with a chiropractor, Dr. Bobby Mal Hollander. Dr. Hollander diagnosed Henegar with a herniated disc in his back. Surgery was eventually required. Henegar subsequently sued appellant for negligence, alleging that the collision was the proximate cause of his back injury. After a jury trial, Henegar was awarded $86,491.91 in damages, including the costs associated with the surgery.

Appellant argues four issues on appeal. In her first issue, appellant asserts that the trial court abused its discretion in admitting the report and testimony of Dr. Hollander, the chiropractor who initially treated Henegar for his back pain. In her second issue, appellant asserts that the evidence was legally and factually insufficient to support the jury's award of damages for past medical expenses. In her third issue, appellant asserts that the jury charge impermissibly included damage elements that were not supported by competent evidence of causation. In her fourth issue, appellant argues that the trial court erred in not calculating prejudgment and postjudgment interest at a rate of 5 percent.

■ In her first issue on appeal, appellant asserts that Dr. Hollander was not

qualified to give an expert opinion on what caused Henegar's need for surgery; therefore, the trial court abused its discretion in admitting his report and testimony. We disagree.

The decision as to whether an expert witness is qualified to testify is a matter committed to the trial court's discretion. *United Blood Services v. Longoria*, 938 S.W.2d 29, 30 (Tex.1997). The trial court abuses its discretion if it "acted without reference to any guiding rules or principles." *E.I. du Pont de Nemours and Company, Inc. v. Robinson*, 923 S.W.2d 549, 558 (Tex.1995). The offering party bears the burden of establishing that the witness is qualified as an expert. *Broders v. Heise*, 924 S.W.2d 148, 151 (Tex.1996).

We conclude that Dr. Hollander was qualified to testify about what caused the need for Henegar's back surgery. Although he was not a surgeon, Dr. Hollander testified that he had been a chiropractor for 20 years. He graduated in 1983 with a Doctorate in Chiropractic Medicine from the Texas Chiropractic College in Pasadena. There, he studied anatomy, physiology, and pathology. He also served as a professor at the Texas Chiropractic College. Dr. Hollander further testified that he was familiar with the anatomy and conditions of the spine.

In diagnosing Henegar with a herniated disc, Dr. Hollander performed a series of physical, orthopedic, and range-of-motion tests. In forming his opinion that the automobile collision caused the herniated disc, Dr. Hollander relied not only on his 20 years of chiropractic experience, but also on postgraduate work in physics and dynamics, in addition to the patient information and history provided by Henegar during their initial consultation. In Dr. Hollander's practice, he has treated other patients with herniated discs, and he testi-

fied that a herniated disc is often referred to a surgeon for actual surgery.

Because of Dr. Hollander's extensive experience with chiropractic medicine in general and herniated discs in particular, we do not believe that the trial court abused its discretion in finding that Dr. Hollander was qualified to testify that the car collision caused Henegar's back injury and that the back injury required surgery. We overrule appellant's first issue on appeal.

In her second issue on appeal, appellant asserts that the evidence was legally and factually insufficient to support the jury's award of damages for past medical expenses. However, appellant disputes the sufficiency of evidence for only one element of Henegar's total damages, the cost of surgery and the hospital charges related to the surgery. Appellant's argument for both her legal and factual sufficiency points is that there was no competent causation evidence to establish that the surgery was a result of the car accident. We disagree.

To address a "legal sufficiency" or "no evidence" challenge, the appellate court must consider only the evidence and inferences that tend to support the finding, disregarding any evidence or inferences to the contrary. *Southwest Key Program, Inc. v. Gil–Perez*, 81 S.W.3d 269, 274 (Tex. 2002); *Cannon v. Sun–Key Oil Co., Inc.*, 117 S.W.3d 416, 419 (Tex.App.-Eastland 2003, pet'n den'd). An appellate court will sustain a no-evidence issue when: (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the only evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Cannon v. Sun–Key Oil Co.,*

*Inc., supra.* In order to determine if the evidence is factually sufficient, we must review all of the evidence and determine whether the challenged finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Dow Chemical Co. v. Francis,* 46 S.W.3d 237, 242 (Tex.2001); *Davis Apparel v. Gale–Sobel, A Division of Angelica Corporation,* 117 S.W.3d 15, 18 (Tex.App.-Eastland 2003, no pet'n).

Henegar submitted into evidence a report by Dr. Hollander explaining Henegar's history, back injury, and subsequent treatment. In the report, Dr. Hollander concludes that "the surgical intervention entered into by Dr. Ramsey was the sole result of [the] motor vehicle accident that [Henegar] had been involved with." Dr. Hollander also testified during trial that, based on his education, training, and experience diagnosing herniated discs, the condition operated on was a result of the accident on May 31, 1999. Because of Dr. Hollander's 20 years of chiropractic experience, his opinion is legally sufficient, competent evidence of causation.

◼ Dr. Hollander's report and testimony also constitute factually sufficient evidence of causation. In reviewing all of the evidence, we find that Dr. Hollander's report and testimony are not so against the great weight and preponderance of the evidence as to be manifestly unjust. Appellant did not present any evidence refuting Dr. Hollander's report or testimony. Appellant did present some evidence suggesting that Henegar suffered from back problems prior to the accident, but she presented no evidence tending to prove that these prior back problems were the actual cause of Henegar's surgery. This is not enough for us to conclude that the jury reached a manifestly unjust decision. We overrule appellant's second issue on appeal.

In her third issue on appeal, appellant asserts that the trial court improperly submitted a jury question that mixed damages for past chiropractic care with damages for the surgery. Appellant contends that there was some competent evidence of causation for past chiropractic care, but no competent evidence of causation for the surgery. As with her second issue on appeal, appellant's argument relies on the assumption that Dr. Hollander's testimony was not competent evidence of causation. Because we have already held that Dr. Hollander was qualified to testify about causation, we overrule appellant's third issue on appeal.

◼ In appellant's fourth issue on appeal, she argues that the judgment should be reformed to reflect a 5 percent prejudgment and postjudgment interest rate. We agree. A judgment in a personal injury case earns both prejudgment and postjudgment interest. *See* TEX. FIN. CODE ANN. §§ 304.005 & 304.102 (Vernon Supp. 2004–2005). Both the prejudgment and postjudgment interest rates are controlled by statute. *See* TEX. FIN. CODE ANN. §§ 304.003 & 304.102 (Vernon Supp.2004 – 2005). Because statutory construction is a question of law, we review the trial court's decision de novo. *Texas Department of Transportation v. Needham,* 82 S.W.3d 314, 318 (Tex.2002).

The prejudgment interest rate is equal to the postjudgment interest rate applicable at the time of judgment. TEX. FIN. CODE ANN. § 304.103 (Vernon Supp. 2004–2005). During the regular 2003 legislative session, the legislature passed House Bills 4 and 2415, both of which contained nearly identical amendments to the Finance Code. The amendments reduced the postjudgment interest rate from

10 percent to 5 percent.[1] Both bills provided that the new interest rate would apply to cases in which a final judgment was "signed or subject to appeal on or after the effective date of this Act." (Tex. H.B.4, 78th Leg., R.S. (2003) and Tex. H.B. 2415, R.S. (2003)).

House Bill 4 took effect on September 1, 2003. *See Pringle v. Moon,* 158 S.W.3d 607, 610 n. 2 (Tex.App.-Fort Worth 2005, no pet'n). House Bill 2415, however, took effect on June 20, 2003. *See Pringle v. Moon, supra* at 610 n. 2. The trial court's judgment in favor of Henegar was signed on July 24, 2003. We conclude that this is also the date the judgment was subject to appeal. *See Columbia Medical Center of Las Colinas v. Bush,* 122 S.W.3d 835, 865 (Tex.App.-Fort Worth 2003, pet'n den'd). As appellant notes in her brief, House Bill 2415 took effect prior to the judgment. We sustain appellant's fourth issue on appeal and modify the judgment to reflect a prejudgment and postjudgment interest rate of 5 percent.[2]

As modified, the judgment of the trial court is affirmed.

---

1. Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 6.04, 2003 Tex. Gen. Laws 847, 862; *see also* Act of June 1, 2003, 78th Leg., R.S., ch. 676, § 2(a), 2003 Tex. Gen. Laws 2096, 2097 (both codified at TEX. FIN. CODE ANN. § 304.003(c) (Vernon Supp.2004–2005)).

2. We note that, if appellant had relied exclusively on House Bill 4 in her brief as she did at the trial court, we would have overruled appellant on this issue because the judgment was signed and subject to appeal prior to September 1, 2003, the effective date of House Bill 4.